POSTED ON WEBSITE

FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re

Linda Lee Rodriguez,

    Debtor.

Case No. 11-60571-B-13

## MEMORANDUM DECISION REGARDING EX PARTE APPLICATION FOR PAYMENT OF UNCLAIMED FUNDS

Before the court is an ex parte application for payment of unclaimed funds filed pursuant to 28 U.S.C. § 2042 on behalf of the debtor's brother Robert Peterson ("Peterson"). The debtor, Linda Rodriguez (the "Debtor"),[1] died shortly after confirmation of her chapter 13 plan, prompting the subsequent dismissal of her bankruptcy case. Upon dismissal, the Debtor was entitled to a refund of monies she had paid into the plan; funds which the chapter 13 trustee subsequently deposited with the clerk of the court. Peterson requests release of the funds on the grounds that he is the Debtor's sole heir with the right to collect her property. Because Peterson has not yet established that fact in compliance with California law, the application will be denied without prejudice.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this

---

[1] The debtor was also known as Linda Lee Peterson.

1

proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 2042, 11 U.S.C. § 347, and General Order Nos. 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

**BACKGROUND AND FINDINGS OF FACT.**

This chapter 13 bankruptcy commenced on September 23, 2011. Michael H. Meyer, Esq., was appointed to serve as the trustee (the "Trustee"). The Debtor's five-year chapter 13 plan was confirmed on January 13, 2012. A few months after confirmation, in May 2012, the Debtor passed away in her home. Due to her death, the Trustee did not receive any more plan payments, leading to dismissal of the case in August 2012.

The Trustee's final report showed that the Debtor was entitled to a refund of undisbursed funds in the amount of $659.20. When the Trustee's check to the Debtor went uncashed, he tendered the money to the clerk of the court (the "Unclaimed Funds" or "Funds"). The clerk then deposited the Funds with the United States Treasury, where they remain unclaimed.

In February 2013, the law firm Dilks & Knopik, LLC ("D&K"), acting on behalf of Peterson, submitted an Application for Payment of Unclaimed Funds to the financial administrator of the court (the "Application").[2] The Application included: (1) a power of attorney authorizing D&K to submit the Application on Peterson's behalf; (2) the Individual Identification Form for Unclaimed Funds,[3] providing Peterson's name, phone number, and address, supported by a copy of his driver's license; (3) a copy of the

---

[2] For the Application, D&K used an older version of the Eastern District's Form EDC 3-950. The current version is available on the court's website at http://www.caeb.uscourts.gov/documents/Forms/EDC/EDC.003-950.pdf.

[3] Form EDC 3-951 is available at http://www.caeb.uscourts.gov/documents/Forms/EDC/EDC.003-951.pdf.

Debtor's death certificate; and (4) an Affidavit of Heirship signed under penalty of perjury by Peterson (the "Affidavit").

In the Affidavit, Peterson stated, *inter alia*, that (1) the Debtor had passed away; (2) she left no will; (3) she had no children and was not married at the time of her death; and (4) he is the only sibling and sole surviving heir of her estate. Based on these statements, Peterson contends that he is entitled to the Unclaimed Funds and is requesting release of the Funds. The court has no reason to doubt the facts stated in the Application.

**DISCUSSION AND CONCLUSIONS OF LAW.**

Pursuant to § 347 of the Bankruptcy Code, a trustee must deposit any unclaimed property of the estate with the clerk of the court, and such property may only be "disposed of under chapter 129 of title 28." 11 U.S.C. § 347(a). Relevant to this case, chapter 129 includes 28 U.S.C. §§ 2041 and 2042. Section 2041 permits the court to release unclaimed funds to the "rightful owners,"[4] while § 2042 directs the court to do so only after an entity claiming a right to the unclaimed funds, on application to the court, shows "full proof of the right thereto."[5]

---

[4] Section 2041 provides the following:

All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court.

This section shall not prevent the delivery of any such money to the *rightful owners* upon security, according to agreement of parties, under the direction of the court.

28 U.S.C. § 2041 (emphasis added).

[5] Section 2042 provides the following:

No money deposited under section 2041 of this title shall be withdrawn except by order of court.

The bankruptcy court has a duty to ensure that unclaimed funds are disbursed to the proper party. *In re Pena*, 456 B.R. 451, 453 (Bankr. E.D. Cal. 2011) (citing *In re Scott*, 346 B.R. 557, 558 (Bankr. N.D. Ga. 2006)). Therefore, the burden rests on the applicant to prove that it is presently entitled to the unclaimed funds sought. *Id.* (citing *In re Acker*, 275 B.R. 143, 144 (Bankr. D.D.C. 2002)).

In the Eastern District of California, the procedure for recovering unclaimed funds under 28 U.S.C. § 2042 is prescribed in the Guidelines Pertaining to Applications for Payment of Unclaimed Funds (the "Guidelines").[6] Pursuant to these Guidelines, the request for an order releasing unclaimed funds must be submitted in a written application. The application is typically reviewed by the court on an ex parte basis, and it is generally approved or denied without a hearing. The application for unclaimed funds must be supported by competent evidence, and it must contain, *inter alia*, the following information designed to show that the applicant is the proper entity to claim the money:

- The exact dollar amount of the dividend check issued by the trustee to the original claimant and the date that the funds were deposited with the court as unclaimed funds;

- The full name, address, and telephone number of the original claimant of the funds;

- A brief history of the claim and the original claimant, which includes, if applicable, any change of address, sale, merger, consolidation, buy-out, dissolution, marriage, or death of the claimant together with any supporting

---

In every case in which the right to withdraw money deposited in court under section 2041 has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited in the Treasury in the name and to the credit of the United States. Any claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and *full proof of the right thereto*, obtain an order directing payment to him.

28 U.S.C. § 2042 (emphasis added).

[6] The Guidelines are available on the court's website at http://www.caeb.uscourts.gov/documents/Forms/Guidelines/GL.Appl.pdf.

4

documentation, that addresses why the funds were not deliverable at the time of the initial distribution;

- An affirmative statement as to why the alleged owner of the requested funds is entitled to receive the funds;

- The alleged owner's identity and relationship to the original claimant; and

- If the applicant is the agent or representative of the alleged owner of the funds, a statement that the alleged owner has authorized the applicant to collect the funds, supported by an original power of attorney containing the alleged owner's notarized signature and such a grant of authority.

The analysis here focuses on the terms "rightful owners" and "full proof of the right thereto" as prescribed by 28 U.S.C. §§ 2041 and 2042. Peterson must show that he is legally entitled to collect the decedent-Debtor's property. Although D&K has completed the Application substantially in compliance with the court's Guidelines, the Application still falls short of establishing Peterson's right to collect the Unclaimed Funds under applicable law. The bankruptcy court generally looks to state law to determine property rights. *See Butner v. United States*, 440 U.S. 48, 54–55 (1979). Since this case deals with succession rights in an intestate decedent's property, the court must turn to the relevant provisions of the California Probate Code.

Under California law, in the absence of a will, title to a decedent's property vests immediately upon the decedent's death "to the decedent's heirs as prescribed in the laws governing intestate succession." Cal. Prob. Code § 7000. Since Peterson has shown that the Debtor left no will and that he is the sole heir to her estate, it would appear that the Debtor's right in the Unclaimed Funds vested in Peterson upon her death.

However, vesting alone is not the end of the inquiry and the vesting of a decedent's property does not mean the heir can immediately obtain possession of the property. Under California law, the decedent's property is still "subject to administration under [the California Probate Code], except as otherwise provided by law, and is subject to the rights of beneficiaries, creditors, and other persons as provided by law." Cal. Prob.

Code § 7001; *see also Trippet v. State*, 149 Cal. 521, 529–30 (1906) ("But the heir must await the completion of administration and the determination of his heirship by the decree of administration before he can enter upon the enjoyment and possession of his vested right."). Here, Peterson has not indicated whether the decedent-Debtor's estate is being or has been administered under California law and whether Peterson is acting as the court-appointed personal representative with the right to collect the Debtor's property. *See* Cal. Prob. Code § 9650 (requiring a person holding decedent's property to surrender property to the personal representative upon request). This information is typically evidenced by an order from the probate court.

In limited circumstances, a decedent's heir may be entitled to receive tangible personal property of the decedent by affidavit, and without having to procure letters of administration or await probate of a will. *See* Cal. Prob. Code §§ 13100, 13101.[7] However, Peterson has not made a showing that these circumstances exist. Although Peterson did submit his Affidavit of Heirship, the Affidavit does not establish the statutory prerequisites under California Probate Code § 13101 to permit expedited collection of the Unclaimed Funds. Specifically, the Affidavit does not show that (1) "[n]o proceeding is now being or has been conducted in California for administration of the decedent's estate," Cal. Prob. Code § 13101(a)(4)(A); (2) "[t]he current gross fair market value of the decedent's real and personal property in California . . . does not exceed one hundred fifty thousand dollars ($150,000)," Cal. Prob. Code § 13101(a)(5); (3) "[a] description of the property of the decedent that is to be paid, transferred, or delivered to the affiant," Cal. Prob. Code § 13101(a)(6); and (4) "[n]o other person has a superior right to the interest of the decedent in the described property," Cal. Prob. Code § 13101(a)(9).

Once Peterson establishes the requirements under California Probate Code

---

[7] The "affidavit" procedure cannot be used for real property. Cal. Prob. Code § 13115.

§§ 13100 to 13104 inclusive, the court "may rely in good faith on the statements in the affidavit . . . and has no duty to inquire into the truth of any statement in the affidavit." Cal. Prob. Code § 13106(a). Satisfying these requirements will then be sufficient to establish the "full proof of the right thereto" required by 28 U.S.C. § 2042. At that time, Peterson will be entitled to have the property described in the Application delivered to him.[8] See Cal. Prob. Code § 13105(a).

**CONCLUSION.**

Because Peterson has not made the showing required by California law for collection of the decedent-Debtor's property by affidavit, the Application for Payment of Unclaimed Funds will be denied without prejudice. Peterson may resubmit his Application with an affidavit that satisfies the statutory requirements found in California Probate Code §§ 13100 to 13104.

Dated: March 19, 2013

_W. Richard Lee_
United States Bankruptcy Judge

---

[8] It should be noted here that Peterson's use of the "affidavit" procedure under California Probate Code §§ 13100–13116 may subject him to personal liability for the Debtor's unsecured debts. See Cal. Prob. Code § 13109. The Debtor's Schedule F showed $66,740 in unsecured debts. Those debts may be enforced against Peterson up to the amount of the property he will receive from the court, $659.20. Cal. Prob. Code § 13112(b). Thus, obtaining the Funds by affidavit may be a futile or even counterproductive effort.

Linda Lee Rodriguez, Case No. 11-60571-B-13

Joseph M. Arnold, Esq.
Attorney at Law
30 River Park Place West, #420
Fresno, CA 93720

Brian J. Dilks
Dilks & Knopik, LLC
35308 SE Center Street
Snoqualmie, WA 98065

Robert Peterson
2029 Tulare Street
Selma, CA 93662

Michael H. Meyer, Esq.
Chapter 13 Trustee
P.O. Box 28950
Fresno, CA 93729-8950

Karen Ceriani
Financial Administrator
U.S. Bankruptcy Court
501 I Street, Suite 3-200
Sacramento, CA 95814

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare St., Ste. 1401
Fresno, CA 93721